UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00047-MOC

| | | |
|---|---|---|
| **DONALD RAY HONAKER** | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| **ANDREW SAUL,** | ) | ORDER |
| **Acting Commissioner of Social Security** | ) ) | |
| Defendant. | ) | |

**FINDINGS AND CONCLUSIONS**

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Docs. Nos. 17, 21). Plaintiff has exhausted the administrative appeals process of the Social Security Administration, so this case is ripe for judicial review under 42 U.S.C. § 405(g). After considering the motions and reviewing the pleadings, the Court denies Plaintiff's motion, grants the Commissioner's motion, and issues an order affirming the Administrative Law Judge's decision.

I.         PROCEDURAL HISTORY

Donald Ray Honaker ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act").

In May 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"). Plaintiff alleged his disability began in February 2012 after hurting

1

himself at work. (Tr. 59). The Commissioner denied his application in March 2014 and denied it again after reconsideration in May 2014. (Tr. 605). Plaintiff filed a timely request for a hearing with an Administrative Law Judge ("ALJ"). (Tr. 112). He appeared before ALJ Stefanelli and Vocational Expert ("VE") Ellen Levine in April 2016 for his hearing. The ALJ issued an unfavorable decision in September 2016, and the Appeals Council denied his request for review in July 2017. (Tr. 6).

In September 2017, Plaintiff brought a civil action against the Commissioner because he had exhausted the administrative appeals process. 42 U.S.C. § 405(g). (Tr. 601). Plaintiff's Motion for Summary Judgment was granted, and in May 2018 the Court reversed and remanded the case to the Commissioner. (Tr. 610). The Appeals Council remanded the case to the ALJ for a new hearing. In May 2019, Plaintiff appeared for another hearing with ALJ Stefanelli and a new VE, Jacqueline Kennedy-Merritt. (Tr. 537). The ALJ issued an unfavorable decision in August 2019. The Appeals Council denied Plaintiff's request for review in February 2020, making the ALJ's decision final for purposes of judicial review. (Tr. 547). This appeal followed.

## II. STANDARD OF REVIEW

### a. Introduction

In considering cross-motions for summary judgment, the Court "examines each motion separately" under Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). The Court reviews each motion on its own merits to determine if "either of the parties deserve judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted).

The Court has the power in Social Security cases to affirm, modify, or reverse the Commissioner's decision without remanding the case for a new hearing. 42 U.S.C. § 405(g). A

review of the Commissioner's decision examines whether substantial evidence supports the decision, and whether the Commissioner applied the correct legal standards in coming to their decision. Johnson v. Barnhart, 343 F.3d 650, 653 (4th Cir. 2005). The threshold of evidence is not high. It requires relevant evidence that a reasonable person would accept as adequate. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation omitted).

The Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for the ALJ's when it conducts substantial evidence review. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. So even if the Court would have decided the case differently given the evidence presented, it must defer to the Commissioner and the ALJ if their decision is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Therefore, the issue is not if the claimant is disabled, but instead if the ALJ's finding that the claimant is not disabled is supported by evidence and was made by applying relevant law. Craig v. Chater, 76 F3d 585, 589 (4th Cir. 1996).

### b. Sequential Evaluation

The Social Security Act establishes a five-step process to determine whether an individual is "disabled" under the meaning of the Act. 20 C.F.R. § 404.1520. "Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or has lasted or can be expected to last for a continuous period of over 12 months. 20 C.F.R. § 404.1505(a).

If the ALJ finds the claimant is disabled or not disabled at a step, then they make their determination and do not go to the next step. If it is unclear whether the claimant is disabled or not disabled at one step, they will go to the next. The claimant bears the burden of proof in steps one through four. At step five, the burden of proof shifts from the claimant to the Commissioner. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

The five steps are as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. § 404.1520.

   c. **Administrative Decision**

In the May 2019 hearing, the ALJ used the sequential evaluation process to conclude Plaintiff was not disabled from February 2012 to May 2019. She found that Plaintiff had not engaged in substantial gainful activity since February 2012. (Tr. 540). Additionally, she found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and muscle tear of the right shoulder. (Tr. 540). She further found Plaintiff did not suffer from depression, post-traumatic stress disorder ("PTSD"), and anxiety. (Tr. 541). She concluded that

4

Plaintiff did not have a mental disability because there was not a period of 12 continuous months where Plaintiff's depression, PTSD, and anxiety created more than mild limitations in his capacity to work. (Id.).

The ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severities of one of the listed impairments in Appendix I of part P of 20 C.F.R. § 404. (Tr. 542). According to her, Plaintiff's shoulder tear did not meet or equal the criteria in Sections 1.02 and 1.08 of the listings of impairments and his degenerative disc disease did not meet or equal the listing in Section 1.04. (Id.).

The ALJ gave Plaintiff the RFC to perform "light work." (Id.). Under a "light work" RFC, he occasionally can lift no more than ten pounds with his right arm and reach overhead with his right arm. He cannot push or pull with his right arm, and he can frequently (but not constantly) manipulate things with his right arm and hand. He can never climb ladders, ropes, or scaffolds, or have exposure to hazards, heights, or moving machines. (Tr. 543). The ALJ found that Plaintiff is not able to perform past relevant work as a furniture upholsterer. (Tr. 550).

Finally, the ALJ found significant numbers of jobs in the national economy that Plaintiff can perform given his age, education, work experience, and RFC. These included counter clerk, page, and furniture rental consultant. (Tr. 550-51).

### III. DISCUSSION

Plaintiff alleges that the ALJ committed two errors. First, the ALJ's RFC evaluation frustrates meaningful review. Second, the Commissioner failed to meet his burden at step five of the sequential evaluation process. (Doc. No. 18 at 4).

    **a. The ALJ's RFC Evaluation**

Plaintiff alleges the RFC evaluation frustrates meaningful review because the ALJ failed to consider and include all of Plaintiff's limitations despite contradictory evidence in the record. Plaintiff also alleges the ALJ failed to logically explain the RFC evaluation and the varying degrees of weight she gave to differing opinions about Plaintiff's limitations. The Court will evaluate each of these claims in turn.

Plaintiff alleges that the ALJ did not assess claimant's capacity to perform relevant functions, despite contradictory evidence in the record, because she did not account for a variety of Plaintiff's limitations including: "limited range of motion in his bilateral upper extremities, limited range of motion of the spine, antalgic gait, poor balance, weak right-hand grip, inability to pick up small objects with his right hand, inability to button or unbutton clothes with his right hand, inability to turn a doorknob with his right hand, inability to walk more than 100 feet without difficulty, the need for unscheduled breaks due to pain, and the need to shift positions from sitting to standing or walking at will." (Doc. No. 18 at 6). Plaintiff also alleges the ALJ did not consider the opinions of his therapist Xiong and psychiatric nurse practitioner Nurse Penland regarding Plaintiff's mental state. (Id.).

The Court disagrees with this assessment of the ALJ's analysis. The ALJ assessed all of Plaintiff's evidence and decided that some sources were inconsistent with the larger body of medical evidence. She accordingly gave these sources less weight in her analysis. The additional impairments Plaintiff lists were all explicitly discussed by the ALJ in her decision.

First, the ALJ discussed all of Plaintiff's potential physical impairments when she determined his RFC. (Tr. 542). She indicated that his complaints of limited range of motion in his bilateral upper extremities and limited range of motion of the spine were not consistent with reports of his activities: he was making sandwiches, washing dishes, picking up plates, doing

6

chores, and driving. (Tr. 543). She noted that in December 2017, medical examinations found his right arm strength was a 4/5, and his left arm was normal. (Tr. 544). She also noted that Plaintiff had limited extension and abduction on his shoulder but refused to try various treatments, including joint injection, anti-inflammatories, and external rotation. The ALJ further mentioned Plaintiff's antalgic gait but stated that in examinations during 2018 and 2019 Plaintiff had a normal gait and normal sensation. (Tr. 550). She also mentioned that some of Plaintiff's actions, including "discontinuance of physical therapy sessions, failure to sustain a consistent medical regimen, lack of hospitalization," and refusal of surgery or other medical regimens were "evidence that support an acceptable determination" that Plaintiff's pain was not disabling. (Tr. 547); Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992).

Some of the impairments Plaintiff alleged—an inability to walk more than 100 feet without difficulty, the need for unscheduled breaks due to pain, and the need to shift positions at will—are in medical opinions the ALJ discounted. (Doc. No. 18 at 6); (Tr. 543-49). For example, Dr. Girmay opined that Plaintiff could walk only 100 feet without difficulty. This opinion was given little weight because it was too vague to establish an RFC. (Tr. 548). In another example, PA Patterson stated Plaintiff was "unable to use right hand," needed "unscheduled breaks," and needed a job allowing "shifting positions at will" due to back pain. (Tr. 549). The ALJ gave this opinion little weight because Plaintiff's documented activities are inconsistent with the limitations identified by Dr. Girmay and PA Patterson. Furthermore, she reasoned that PA Patterson did not provide a medically determinable impairment for lower back pain. The ALJ found PA Patterson's opinion especially unconvincing because he noted Plaintiff's RFC was present since 2012 even though he had not treated Plaintiff before 2018. (Id.). Lastly, Dr. dePerczel recommended for Plaintiff to work only using the left arm. (Tr. 548). Over the span of

7

a few months, Dr. dePerczel updated his recommendations a number of times. (Id.). The ALJ discounted this opinion because it did not specify whether the limitations Dr. dePerczel prescribed were due to a permanent limitation, or a temporary one. (Id.).

Second, it is clear the ALJ considered Xiong and Nurse Penland's opinions of Plaintiff's mental health when she decided his mental state did not limit his capacity to work. She also discussed why she did not give them great weight in her decision. Ms. Xiong's opinion that Plaintiff "struggled to manage his impulses and anxiety when in social settings due to the decrease in self-confidence" from being unable to work was given little weight by the ALJ, because it did not say if his symptoms would limit his ability to work. (Tr. 541).

Nurse Penland noted Plaintiff would need to take extended breaks during the day because he had concentration issues. (Id.). The ALJ did not weigh Nurse Penland's opinion strongly because he saw Plaintiff for less than a year, mostly relied on self-reporting from Plaintiff, never considered Plaintiff's history of opiate abuse, and his opinion was inconsistent with treatment notes from other doctors. (Tr. 253, 262, 267, 288, 290, 292, 339, 340, 542).

In contrast to Nurse Penland and Xiong, State agency medical consultants found Plaintiff's mental impairments to be non-severe. (Id.). The ALJ said she relied more on the State's medical consultant opinions than Nurse Penland or Xiong's because their opinions are more consistent with the evaluations of numerous doctors that Plaintiff saw. The ALJ concluded that there "was no period of 12 continuous months during which the claimant's depression and anxiety caused more than mild limitations." (Id.).

Plaintiff also contends that the ALJ did not bridge the gap between her RFC determination and evidence she found useful in the case. The Court disagrees. The ALJ holistically evaluated the evidence and based her opinion upon the evidence she found most

8

compelling. She stated the "claimant's statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record," which is why he was cleared for light work under his RFC. (Tr. 544). The ALJ's explanation of disability status only needs to be sufficient "for claimant…to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2). The ALJ adequately discussed why she discounted the medical opinions of Nurse Penland, Xiong, and PA Patterson. She also discussed the medical opinions and examinations of doctors Plaintiff saw continuously over the years in coming to her decision.

In sum, the ALJ considered opinions in the record related to Plaintiff's impairments and explained why she gave different weights to different opinions. The Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for the ALJ's when it reviews substantial evidence. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). So even if the Court reviewed the totality of the evidence and determined that it would come to a different decision than the ALJ, it must defer to the ALJ so long as she backed up her opinion with substantial evidence. Id. The ALJ did not use some of the opinion evidence from Nurse Penland, Xiong, Dr. Girmay, and Dr. dePerczel because it was too vague to be useful in selecting an RFC, inconsistent with medical evidence from other doctors, or conclusory. (Tr. 548-49). She discussed the reasoning throughout her entire decision, which is acceptable because "we must read the ALJ's decision as a whole." Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018).

### b. Step Five of the Sequential Evaluation Process.

At step five of the sequential evaluation process to determine disability, the Commissioner must prove a significant number of jobs are available to the claimant based on their RFC and professional capabilities if the claimant cannot go back to their old job. Hines v.

9

Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). If the Commissioner cannot meet this burden, then the claimant is disabled under the Act. Id. at 567.

After determining Plaintiff's RFC and consulting a vocational expert, the ALJ found that he could work as a counter clerk, a page, and a furniture rental consultant. (Tr. 550-51). The VE found significant numbers of these jobs in the economy. (Tr. 597). The VE identified the potential jobs for Plaintiff based on the Dictionary of Occupational Titles ("DOT"). When Plaintiff had limitations not addressed by the DOT, the VE relied on her expertise and experience in the field to make a recommendation. (Tr. 551). Plaintiff contends this is an error because the ALJ cannot rely "unquestionably on a VE's testimony." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

The Court disagrees with Plaintiff's assessment of error. ALJs need to reasonably resolve any apparent conflicts between the VE and the DOT. Id. If the VE's testimony and the DOT do not match, the ALJ must ask for a reasonable explanation why the accounts differ. Id. The ALJ did ask the VE if her opinion was consistent with the DOT. The VE explained the DOT did not address certain limitations in Plaintiff's RFC, so she supplemented the DOT with her expertise. (Tr. 598-99). Here, there was not a conflict between the VE's testimony and the DOT. Instead, the DOT lacked information, and the VE elaborated on that information using her professional opinion. The DOT's lack of information on overhead reaching, manipulation with the dominant upper extremity, and maintaining concentration is a reasonable explanation for the difference between the two sources. (Tr. 598-99).

Furthermore, Plaintiff contends that all three job positions require "frequent reaching and manipulation with the upper extremities." (Doc. No. 18 at 13). That is not true. The counter clerk, page position, and furniture rental consultant jobs all require "occasional" reaching,

handling, and fingering, existing up to 1/3 of the time. DOT No. 249.366-010; DOT No. 353.367-022; DOT No. 295.357-018. These job descriptions are consistent with the guidelines of the RFC the ALJ gave Plaintiff.

The Court finds that the ALJ did what is required when she asked the VE why she should rely on the VE testimony instead of the DOT. "Neither the DOT nor the VE…evidence automatically 'trumps' when there is a conflict." SSR 00-4P, 65 Fed. Reg. 75,759 (Soc. Sec. Admin. Dec. 4, 2000). The adjudicator must determine whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than the DOT. Id. A lack of information in the DOT is a reasonable basis for relying on the VE's opinion. Thus, the ALJ and the Commissioner fulfilled their burden of proof under step five of the sequential evaluation process to determine whether Plaintiff had a disability under the meaning of the Act.

### IV. CONCLUSION

The Court has carefully reviewed the entire record and concludes that the ALJ's decision is supported by substantial evidence.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. No. 17, is **DENIED**, and the Commissioner's Motion for Summary Judgment, Doc. No. 21, is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, the ALJ's final decision is **AFFIRMED**.

Signed: June 23, 2021



Max O. Cogburn Jr
United States District Judge